[Civ. No. 757. Fifth Dist. Sept. 22, 1967.]

PETER KOSSIAN, Plaintiff and Appellant, v. AMERICAN NATIONAL INSURANCE CO., Defendant and Respondent.

Fullerton, Lang & Richert and William T. Richert for Plaintiff and Appellant.

Walter H. Condley for Defendant and Respondent.

STONE, J.—On February 19, 1964, fire destroyed a portion of the Bakersfield Inn, owned by one Reichert. At the time, the property was subject to a first deed of trust in which defendant was the beneficiary. Pursuant to the requirements of the deed of trust, defendant's interest in the property was protected by policies of fire insurance. On March 16, 1964, Reichert, as owner in possession, entered into a written contract with plaintiff whereby plaintiff agreed to clean up and remove the debris from the fire damaged portion of the Inn for the sum of $18,900. Defendant had no knowledge of the execution of the agreement between plaintiff and Reichert.

Plaintiff commenced work in the middle of March 1964, and completed it in early April. During the entire time work was in progress Reichert was in possession of the premises as owner, although defendant caused a notice of Reichert's default under the deed of trust to be filed four days after the contract for demolition was entered into between plaintiff and Reichert. The record does not reflect that plaintiff had actual knowledge of the notice of default until after the work was completed.

Some time after plaintiff had fully performed the contract, Reichert filed a petition in bankruptcy. The trustee in bankruptcy abandoned the premises comprising the Bakersfield Inn, together with any interest in the four fire insurance policies up to the amount of $424,000. Each policy contained a provision insuring against the cost of cleaning up and removing debris caused by fire damage.

Following abandonment of the policies by the trustee in bankruptcy, Reichert and his wife assigned their interest in them to defendant in accordance with the terms of the deed of trust. Defendant submitted proofs of loss, claiming a total of $160,000, including the sum of $18,000 as the estimated cost for removing and cleaning up debris. These claims were rejected by the carriers; negotiations followed; the compromise figure of $135,620 was agreed upon and this amount was paid to defendant. We do not have an itemization of the adjusted claims of loss upon which the compromised loss settlement was made, so that the record is not clear as to what part of the $18,900 cost of debris removal defendant received. It is clear, however, that the insurance payment included at least a part of the cost of debris removal and demolition.

Defendant demonstrates, by a careful analysis of the facts, that there was no direct relationship between plaintiff and defendant in regard to either the work performed on the

property after the fire or in relation to the fire insurance policies. The contract for debris removal was between plaintiff and Reichert, and defendant did not induce plaintiff, directly or indirectly, to enter into that contract. Plaintiff had no lien against the property resulting from his work, and if he had such a lien it would have been wiped out by defendant's foreclosure of its first deed of trust.

Had the circumstances been simply that defendant, by foreclosure, took the property improved by plaintiff's debris removal, there would be a benefit conferred upon defendant by plaintiff, but no unjust enrichment. (See *Griffith* v. *Hofues*, 201 Cal.App.2d 502 [19 Cal.Rptr. 900].) It is the additional fact that defendant made a claim to the insurance carriers for the value of work done by plaintiff that is the nub of the case.

 Defendant argues that plaintiff was not a party to the insurance contracts, while defendant had a contract right to collect indemnity for losses resulting from the fire, including the debris removal cost. This contract right was embodied in the insurance policies. Defendant relies upon *Russell* v. *Williams*, 58 Cal.2d 487, where it is said, at page 490 [24 Cal.Rptr. 859, 374 P.2d 827] : "It is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property. [Citations.] This principle gives rise to the supplemental rule that, in the absence of a special contract, the proceeds of a fire insurance policy are not a substitute for the property the loss of which is the subject of indemnity."

Defendant says it made no agreement, express or implied, with plaintiff that it would pay for the debris removal or that any part of the insurance proceeds would be applied for that purpose. Therefore, concludes defendant, there being no privity of relationship between it and plaintiff, and no fraud or deceit alleged or proved, defendant has the right to the property benefited by plaintiff's work and labor expended in removing the debris and to the insurance payments as well.

Plaintiff makes no claim to the insurance "fund" upon the ground he relied thereon similar to the reliance of a mechanic or materialman that forms the basis of an equitable claim to a building fund. (*Smith* v. *Anglo-California Trust Co.* 205 Cal. 496 [271 P. 898] ; *Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.*, 216 Cal. 447 [14 P.2d 510].) He relies upon the

basic premise that defendant should not be allowed to have the fruits of plaintiff's labor and also the money value of that labor. This, of course, is a simplified pronouncement of the doctrine of unjust enrichment, a theory which can, in some instances, have validity without privity of relationship.

The most prevalent implied-in-fact contract recognized under the doctrine of unjust enrichment is predicated upon a relationship between the parties from which the court infers an intent. However, the doctrine also recognizes an obligation *imposed* by law regardless of the intent of the parties. In these instances there need be no relationship that gives substance to an implied intent basic to the "contract" concept, rather the obligation is imposed because good conscience dictates that under the circumstances the person benefited should make reimbursement. (*Desny* v. *Wilder,* 46 Cal.2d 715, 734 [299 P.2d 257]; *Ward* v. *Taggart,* 51 Cal.2d 736, 743 [336 P.2d 534]; *County of Santa Clara* v. *Robbiano,* 180 Cal.App. 2d 845, 848 [5 Cal.Rptr. 19]; 1 Williston on Contracts (3d ed.) p. 12; Thurston, *Recent Developments in Restitution,* 45 Mich.L.Rev. p. 935.)

Plaintiff's claim does not rest upon a quasi contract implied in fact but upon an equitable obligation *imposed* by law. It is true that defendant's right to the insurance payment was a contract right embodied in the policies of insurance, as explicated in *Russell* v. *Williams, supra,* 58 Cal.2d 487, nevertheless the indemnity payment was based in part upon a claim of loss that did not exist because plaintiff had already remedied the loss by his work for which he was not paid.

We are cited no California cases that are close aboard, and independent research reveals none. Lack of precedent applicable to the facts peculiar to this case is not surprising, however, as the authors of the Restatement recognize that the essential nature of equity cases concerned with problems of restitution makes definitive precedent unlikely. We are guided by the "Underlying Principles" delineated in the Restatement on Restitution: "The rules stated in the Restatement of this Subject depend for their validity upon certain basic assumptions in regard to what is required by justice in the various situations. In this Topic, these are stated in the form of principles. They cannot be stated as rules since either they are too indefinite to be of value in a specific case or, for historical or other reasons, they are not universally applied. They are distinguished from rules in that they are intended

only as general guides for the conduct of the courts . . . ." (P. 11.)

The governing principle is expressed in the opening sentence of the Restatement on Restitution, as follows: "The Restatement of this Subject deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss." (P. 1.)

The question, simply stated, is whether in a jurisdiction that recognizes the equitable doctrine of unjust enrichment one party should be indemnified twice for the same loss, once in labor and materials and again in money, to the detriment (forfeiture) of the party who furnished the labor and materials. We conclude that the doctrine of unjust enrichment is applicable to the facts of this case, and that plaintiff is entitled to reimbursement out of the insurance proceeds paid defendant for work done by plaintiff.

The facts concerning the amount of insurance recovered by defendant and the percentage of the total proof of loss attributable to plaintiff's work are not altogether clear, probably because this is a proceeding for summary judgment before trial of the action. In any event, it is clear that defendant, in addition to taking over the property which plaintiff cleared of debris, also received indemnity insurance payments covering at least part of the cost for clearing that property of debris. The amount can be made certain by a trial on the merits, and if it develops that defendant recovered only a part of the cost for debris removal, this fact does not preclude a partial recovery by plaintiff. We learn from the Restatement, page 611: "Where a person is entitled to restitution from another because the other, without tortious conduct, has received a benefit, the measure of recovery for the benefit thus received is the value of what was received . . . ."

Thus, to the extent defendant received insurance for debris removal performed by plaintiff, plaintiff should recover. If defendant received less than the value of plaintiff's work, as defendant seems to contend, then plaintiff should recover *pro tanto*.

The judgment is reversed.

Conley, P. J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 15, 1967.