399 So.2d 81 (1981)
CIRCLE FINANCE COMPANY, D/B/a Securities Investment Company of Florida, Appellant,
v.
Jessie L. PEACOCK and Sara A. Peacock, Husband and Wife, Appellees.
No. TT-336.
District Court of Appeal of Florida, First District.
May 28, 1981.
*82 Alan B. Bookman of Emmanuel, Sheppard & Condon, Pensacola, for appellant.
E. Brian Lang of Mann & Lang, Pensacola, for appellees.
ERVIN, Judge.
Circle Finance Company appeals a monetary award in favor of the Peacocks in an *83 equitable action which sought rescission of a quit claim deed, incidental damages, and other equitable relief. We affirm.
The Peacocks executed several second mortgages on their home to Circle in exchange for loans and loan renewals during 1972-1975, and in most instances purchased credit life and disability insurance on behalf of Mr. Peacock. In March, 1975, Peacock was declared permanently and totally disabled. Whether the Peacocks immediately notified Circle of his disability or whether they notified it after a formal notice of claim for disability benefits was filed, following the delivery of the quit claim deed, was a question of fact. At any event, the Peacocks continued to make partial payments on the loans from March to November, 1975, when they took out one more loan in an attempt to bring their obligations current. Later, however, after they had once again fallen into arrears on their notes, the Peacocks, in March, 1976, executed a quit claim deed to Circle in an attempt to satisfy their indebtedness. Following receipt by it of the quit claim deed, Circle, as beneficiary of the disability insurance policies, received $13,178 in insurance proceeds as a result of Peacock's disability. Circle later refused the Peacocks' demand to return the deed or to reimburse them for the benefits paid to it, and the Peacocks brought this action.
Following non-jury trial, the court, in a letter to the parties' attorneys, and preceding the entry of final judgment, stated that the request for rescission was denied, but that the sum of $10,967.43 would be granted to the Peacocks. That figure was arrived at by aggregating the proceeds of the credit disability proceeds paid to appellant and then deducting $2,211 which had been paid by Circle to the Peacocks' first mortgagee. Neither the court's letter nor its judgment characterized the award as damages.
Circle argues that the trial court, once it denied rescission, was then without authority to grant any monetary relief because damages must be incidental to the primary relief requested. It has of course long been recognized that damages must be incidental to, and not independent of, the equitable cause. Boyd v. Hunter, 104 Fla. 561, 140 So. 666 (1932); La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (1939); Miller v. Rolfe, 97 So.2d 132 (Fla. 1st DCA 1957). And, if a plaintiff has failed to prove grounds for equitable relief, or, if proven, it is plaintiff's fault such relief cannot be granted, a court of equity is without authority to grant damages. Miller v. Rolfe, supra. Conversely, if the equitable relief cannot be granted due to the defendant's wrongdoing, the court may award damages. Winn and Lovett Grocery Co. v. Saffold Bros. Produce Co., 121 Fla. 833, 164 So. 681 (1935); Beavers v. Conner, 258 So.2d 330 (Fla. 3d DCA 1972).
The lower court had before it conflicting evidence from which it could determine whether or not to grant rescission. It chose not to do so. This decision was within a proper exercise of its equitable discretion. If, however, the complaint is considered only as one seeking rescission and damages incidental to rescission, it would have been legally inconsistent for the court to deny rescission, there being nothing in the record indicating that the primary relief sought was impossible, but, on the other hand, to grant incidental damages. Our task is to determine whether there is any support in the record, or any legal basis, for the award entered.
We do not consider that the relief demanded in the Peacocks' amended complaint was limited solely to a request for rescission and incidental damages. Among other things, the Peacocks alleged that the defendant was "compensated for [its] loss, if any, by ... [its] insurance carrier and ... [had] retained Plaintiff's house despite repeated demands to return the house." In their prayer for relief, in addition to seeking cancellation of the deed, and such incidental damages as moving expenses, as well as reimbursement of mortgage payments made after the deed's delivery and rental payments, they also alleged that defendant had "retained insurance policy payments for disability benefits and ... also retained ownership of the house and property formerly *84 belonging to the Plaintiffs." Their prayer concluded with the general request that "the Court grant such other and further relief as it deems equitable."
Under the Florida Rules of Civil Procedure, every complaint is considered to pray for general relief. Fla.R.Civ.P. 1.110(b). The court thus is required to look to the facts alleged, the issues and proof, and not the form of the prayer for relief to determine the nature of the relief which should be granted. Chasin v. Richey, 91 So.2d 811 (Fla. 1957); Phelps v. Higgins, 120 So.2d 633 (Fla.2d DCA 1960). Restated, the character of an equitable pleading is determined, not by its title, but by its contents, and by the actual issues in dispute. Moorhead v. Moorhead, 159 Fla. 470, 31 So.2d 867 (1947); Boyer v. Dye, 51 So.2d 727 (Fla. 1951). Moreover, in equitable actions, it is recognized that the courts have the fullest liberty in molding decrees to the necessity of the action regardless of the prayer. Singer v. Tobin, 201 So.2d 799 (Fla.3d DCA 1967). See also Langford v. Wauchula State Bank, 148 Fla. 236, 4 So.2d 10 (1941), in which the bank sought a partition of certain fire insurance proceeds received by a mortgagor's assignee as to property which had been fire damaged. The Supreme Court sustained not only the lower court's holding that partition would not lie against the defendant, who held only an equitable interest in the land, but also its holding which permitted distribution of the proceeds. In responding to the argument that the complaint should have been dismissed because the complaint sought only partition and not distribution, the court observed that the issue of distribution was properly before the trial court upon a prayer for general relief, and that "[i]n the absence of an abuse of discretion, the chancellor has a right to award such appropriate relief as the parties may be entitled to." 4 So.2d at 11.
Giving heed to the above principles, we consider that the fair scope of the allegations, the issues, and the proof presented, support the trial court's award under a theory of restitution, or unjust enrichment. Unjust enrichment is characterized as the effect of a failure to make restitution for property received by one under such circumstances as to give rise to a legal or equitable obligation, thereby requiring such person to account for his retention of the property. 28 Fla.Jur., Restitution and Implied Contracts, § 3 (1968 rev.). Stated differently, the doctrine is a recognition that a person is accountable to another on the ground that if the former were not required to do so, he would unjustly benefit, or the other would unjustly suffer loss. Restatement of the Law, Restitution 1 (1937). And, more to the point, the doctrine recognizes that one party should not be indemnified twice for the same loss to the detriment of another party. Kossian v. American National Ins. Co., 254 Cal. App.2d 647, 62 Cal. Rptr. 225 (1967).
Thus, unjust enrichment, or restitution, acknowledges an obligation which is imposed by law regardless of the intent of the parties. Id. It is a broad based concept, and, since the doctrine is not dependent upon the existence of wrongdoing, a showing of fraud is not a necessary precondition to its application. See Restatement, Restitution, § 63, comments a-c. The court had before it conflicting evidence from which it could appropriately determine that at the time Circle received the quit claim deed from the Peacocks, Circle had no knowledge of Mr. Peacock's disability. It may thus have concluded that Circle did not employ fraudulent means to acquire the Peacocks' property; hence its denial of the request to cancel the deed. Nevertheless, the court also had before it evidence clearly showing that Circle had twice received compensation for the same indebtedness: The quit claim deed, causing Circle to satisfy all of the Peacocks' outstanding loan balances, and disability insurance benefits, whose purpose was to guarantee payment of the loans to the creditor should the debtor become disabled. As a result of such evidence, the court directed restitution of the insurance proceeds  not an award of damages  since restitution, which does not necessarily involve a wrongdoing, is distinct *85 from a right of action for damages. 66 Am.Jur.2d, Restitution and Implied Contracts, § 166 (1973).
Restitution may be sought either in a court of law before a jury or in an equitable proceeding. See note, Restitution: Concept and Terms, 19 Hastings L.J. 1167, 1168 (1968). There are three generally recognized remedies at equity by which a person who has been unjustly deprived of his property may seek restitution: (1) by impressing a constructive trust, (2) by imposing an equitable lien, and (3) by subrogating him to the rights of the obligee or lien holder. See Restatement, Restitution, §§ 160-162.
The award of the court below is sustainable under a theory of unjust enrichment, and its particular equitable remedy as applied to circumstances before us is appropriately accomplished by the vehicle of a constructive trust. See Bell v. Smith, 159 Fla. 817, 32 So.2d 829 (1949); Davidson v. Lely Estates, Inc., 330 So.2d 528 (Fla.2d DCA 1976). It is particularly applicable in those situations where, although the property was not originally fraudulently acquired, it is against equity that the property should be retained by the person holding it. Bell v. Smith, supra.
It is an ancient maxim of the law that equity is as long as the chancellor's foot. Although the foot of the learned chancellor in the case at bar was indeed broad, it was not so large as to have overstepped the proper bounds of equitable discretion.
AFFIRMED.
LARRY G. SMITH & SHIVERS, JJ., concur.