[No. B185320. Second Dist., Div. Five. June 21, 2006.]

CTC REAL ESTATE SERVICES, Plaintiff, v.
AURORA LEPE, Defendant and Appellant;
COUNTY OF LOS ANGELES, Respondent.

**COUNSEL**

P. Christopher Ardalan and Brett W. Wolff for Defendant and Appellant.

No appearance for Respondent.

OPINION

**MOSK, J.**—We hold that the victim of an identity theft, whose name and other personal information were used without authorization for the purpose of obtaining a loan secured by a purchase money deed of trust to acquire real property, may, as the only claimant, recover undistributed surplus proceeds deposited with the court that remained after a trustee sale of the property and the satisfaction of creditors.

## BACKGROUND

An unknown perpetrator used the name, other personal information, and credit of claimant (defendant and appellant) Aurora Lepe to purchase real property—an act of "identity theft." The perpetrator obtained a loan secured by a purchase money deed of trust[1] to acquire the property. Without Ms. Lepe's knowledge, title to the property was taken in her name, and her name was signed on a promissory note as the maker and on a deed of trust as trustor. The beneficiary under the deed of trust foreclosed, and the trustee, petitioner (plaintiff) CTC Real Estate Services, sold the property at a trustee sale. Following the trustee sale and payments to the lienholders (the holders of first and second deeds of trust),[2] there were surplus funds, presumably because the real property value had increased. After sending a "Notice of Excess Proceeds" to Ms. Lepe—the only one known to have a claim to or interest in the proceeds—the trustee, pursuant to Civil Code section 2924j, subdivision (c), filed with the trial court a petition and declaration regarding unresolved claims and deposit of undistributed surplus proceeds of trustee's sale.

In a declaration, petitioner's attorney stated, "Petitioner is unable to distribute the balance of the surplus funds because the claimant never was the actual borrower and trustor of the foreclosed deed of trust. California Civil Code Section 2924k(a)(4) requires Petitioner to disburse '[t]o the trustor or the trustor's successor in interest' any funds remaining after payment to junior liens or encumbrances. Attorneys for the Trustee believe that the equitable and fair result would be to have Ms. Lepe receive the surplus funds. However, since the attorneys for the Trustee are aware that this claimant is

---

[1] See Code of Civil Procedure section 580b; Civil Code section 2898; 4 Witkin, Summary of California Law (10th ed. 2005) Security Transactions in Real Property, section 185, page 993 (purchase money mortgage "is a mortgage given by the purchaser at the time of conveyance of land, to secure the unpaid balance of the price").

[2] Apparently, the identity thief, using Ms. Lepe's name and the property as security, obtained monies from a second lender.

not the same person as the person who entered into the deed of trust, attorneys for the Trustee are unable to distribute the funds to her. Therefore, Petitioner requests that the Court approve the Proposed Order allowing the deposit of the balance of the surplus proceeds less attorney's fees and costs incurred and discharge Petitioner from any further appearances in this matter." The surplus to be distributed amounted to $51,333.87. The trial court discharged petitioner from any further responsibility and approved its request for attorney fees and costs in the amount of $6,748.90.

Pursuant to Civil Code section 2924j, subdivisions (a)(4) and (d), Ms. Lepe submitted a written claim for the undistributed surplus funds, and her claim turned out to be the only one. She asserted she had the right to the surplus funds because her name and Social Security number had been used fraudulently by the unknown wrongdoer to obtain funding for the purchase of the property. She added that the foreclosure damaged her credit record and required her to spend considerable time dealing with the consequences; a proceeding under chapter 13 of the United States Bankruptcy Code (11 U.S.C. § 1301 et seq.) had been filed in her name without her knowledge; her credit card accounts had been closed; and as a result of the identity theft, she was unable to borrow money for a home she had intended to purchase.

Even though there was no objection to Ms. Lepe's claim, the trial court rejected it, not accepting her theory of a constructive trust because, according to the trial court, the claimant was not the actual trustor of the property and had no connection to it. The trial court ordered that the surplus funds be paid into the Los Angeles County general fund. Ms. Lepe appealed. There is no opposition to the appeal.

## DISCUSSION

Society is now faced with the exploding problem of identity theft,[3] a phenomenon that inevitably creates new issues with which our legal system must deal.[4] Such is the issue before us. The facts are not in dispute. The issue

---

[3] "In 2003, the Federal Trade Commission reported that over twenty-seven million Americans were victims of identity theft in the past five years, including almost ten million people in the past year." (*Graham v. CSC Credit Services* (D.Minn. 2004) 306 F.Supp.2d 873, 881, fn. 1.)

[4] See *Pena v. Toney* (1979) 98 Cal.App.3d 534, 541 [160 Cal.Rptr. 4] ("The trial court was faced with the dilemma of how to dispose of property owned by a thief who relinquished all rights to it but as to which no other interested party has presented a claim coherently supported by a viable legal theory").

is therefore one of law that we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) We reverse the order on the basis of a ground not expressly considered by the trial court. Because the facts are not disputed, and the issue is one of law, we may do so. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Yeap v. Leake* (1977) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680].)

■ A victim of theft is entitled to recover the assets stolen or anything acquired with the stolen assets, even if those assets have a value that exceeds the value of that which was stolen. (See *Pena v. Toney, supra,* 98 Cal.App.3d at p. 542 [160 Cal.Rptr. 4]; *Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.* (1978) 78 Cal.App.3d 371, 375–376 [144 Cal.Rptr. 189]; Rest.3d Restitution (Tent. Draft No. 4, Apr. 8, 2005) § 41, com. d., pp. 71–72.) One's " 'personal identifying information' " (Civ. Code, § 1798.92, subd. (c); Pen. Code, § 530.5, subd. (b)) can be the object of theft. (Pen. Code, §§ 530.5 [unauthorized use of personal identifying information a crime], 186.2, subd. (a)(29) [crime profiteering]; *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 745–748 [25 Cal.Rptr.3d 879] [Pen. Code, § 530.5 not unconstitutionally vague]; see also Civ. Code, §§ 1798.92, 1798.93 [action to establish that one is a victim of identity theft].)

■ A person's identifying information is a valuable asset, the misuse of which can have serious consequences to that person,[5] as Ms. Lepe said it did to her. Ms. Lepe established by a preponderance of the evidence that she was a victim of identity theft (see Civ. Code, § 1798.93, subd. (b)) and specifically that her personal identifying information was misappropriated and used to obtain the property. The lending institution would have paid the surplus to the identity thief had he or she continued in the fraudulent activity. Had this occurred, and had Ms. Lepe learned of the circumstances, she would have been able to recover the surplus from the identity thief because that thief engaged in a fraudulent transaction that produced the surplus by which that thief would have been unjustly enriched. "One of the 'Underlying Principles' of the Restatement [of Restitution (First) § 1] is that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' [Citations.] This is in harmony with the opening sentence: 'The

---

[5] Comment, *Financial Institutions' Duty of Confidentiality to Keep Customer's Personal Information Secure from the Threat of Identity Theft* (2001) 34 U.C. Davis L.Rev. 1077, 1086–1088; *Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500, 1512 [5 Cal.Rptr.3d 847].

Restatement of this Subject deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss.' (Rest., Restitution, p. 1.)" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1016, p. 1105; see *Kossian v. American Nat. Ins. Co.* (1967) 254 Cal.App.2d 647, 650 [62 Cal.Rptr. 225].)[6]

The mere fortuity that the wrongdoer has disappeared without receiving the surplus and is not subject to legal action should not, as a matter of equity, preclude Ms. Lepe from being able to recover the funds not in the possession of the identity thief. (See *Kossian v. American Nat. Ins. Co., supra,* 254 Cal.App.2d at p. 650 ["doctrine of unjust enrichment [is] a theory which can, in some instances, have validity without privity of relationship"].) As said in *Kossian,* "Lack of precedent applicable to the facts peculiar to this case is not surprising, however, as . . . the essential nature of equity cases concerned with problems of restitution makes definitive precedent unlikely." (*Ibid.*)

■ Under the peculiar circumstances of this case, Ms. Lepe has an equitable interest in the surplus funds from the foreclosure sale of the property—funds to which no one else has asserted a claim or interest. Although one might argue she is gaining a windfall, a victim is entitled to trace stolen assets into other assets and obtain the final product even though it may exceed the value of that which was stolen (see Rest.3d Restitution, *supra,* § 41, com. d., p. 72); accordingly, Ms. Lepe should, in this case, be entitled to the product of the identity theft. Moreover, there is evidence that Ms. Lepe suffered substantial damage as a result of the identity theft, although the amount of such damages has not been quantified.

■ We do not have to address a variety of theories that might be advanced for recovery in this novel case.[7] Petitioner agreed that Ms. Lepe is equitably entitled to the surplus funds, and there is no indication that anyone else had an interest in those funds. Because Ms. Lepe has established that she has an interest in the surplus funds, and she is the only claimant, the trial court should distribute those surplus funds to her as provided by Civil Code section 2924j.

---

[6] Had the identity thief been apprehended, and convicted of a crime, Ms. Lepe might have had other avenues of recourse—for example, restitution (Pen. Code, §§ 1202.4, 1203.1(a)(3)) or to claim the forfeited assets in the event the crime was found to be part of a " 'criminal profiteering activity.' " (Pen. Code, § 186.2, subd. (a)(29); see § 186.5.)

[7] Those theories generally supply mechanisms that are not necessarily required here because Ms. Lepe is proceeding under a specific statute. As noted, the trial court rejected a constructive trust theory but did not address other possible theories.

## DISPOSITION

We reverse the order and direct that the trial court enter an order granting the claim of Aurora Lepe for payment to her of the undistributed surplus funds remaining after the award to petitioner of its $6,748.90 attorney fees and costs.

Armstrong, Acting P. J., and Kriegler, J., concurred.