Filed 11/20/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PROFESSIONAL TAX APPEAL, | B282702 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC635476) |
| v. | |
| KENNEDY-WILSON HOLDINGS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael J. Raphael, Judge. Affirmed in part; reversed in part and remanded.

Michael H. Lapidus for Plaintiff and Appellant.

Kulik Gottesman Siegel & Ware, Donald S. Gottesman and David A. Bernardoni for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

This is an appeal from the sustaining of a demurrer without leave to amend. Plaintiff and appellant Professional Tax Appeal entered a contract with the owner of vacant land by which plaintiff agreed on a contingent fee basis to seek 2009 and 2010 property tax reductions. The property tax appeals succeeded in reducing the assessed value of the vacant land by millions of dollars, with a reduction in taxes (and associated fees and penalties) of almost $140,000. Plaintiff was to receive 30 percent of the reduction, or almost $42,000, when the property owner received the tax refund or when the refund was applied to pay delinquent property taxes.

Before the tax refund was paid, the property was acquired in a nonjudicial foreclosure sale by defendant and respondent KW Victory Land Loan, LLC (KW Victory Land), and an affiliated entity, defendant and respondent Kennedy-Wilson Holdings, Inc. (Kennedy-Wilson) (collectively defendants). Upon assuming ownership, defendants paid the delinquent property taxes owed on the property, in the reduced amount achieved by plaintiff's successful tax appeals.

Plaintiff filed this action against defendants for unjust enrichment and conversion. Plaintiff alleged it had no remedy at law against the original property owner after it lost the property in foreclosure, and that defendants had unjustly retained the full benefit of the reduction in taxes owed. Defendants demurred to the original complaint and the trial court sustained the demurrer as to both causes of action without leave to amend.

We affirm the order sustaining defendants' demurrer to the conversion cause of action. We reverse as to the claim for unjust enrichment, concluding the complaint states sufficient facts that defendants knew or had reason to know of plaintiff's right and

2

interest in a percentage of the tax refund, they benefitted in the form of a reduced tax liability, and their retention of those benefits without payment to plaintiff was unjust.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a judgment dismissing an action after the sustaining of a demurrer without leave to amend, our review is de novo. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967; accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) For the limited purpose of reviewing the propriety of the trial court's ruling, we accept as true all well-pled factual allegations in the operative complaint, as well as any facts that may be reasonably implied or inferred from those expressly alleged. (*Aubry*, at pp. 966-967; accord, *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) " 'We also consider matters which may be judicially noticed.' " (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662 (*First Nationwide*).) We do not "however, assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967.)

Our factual summary is drawn from the allegations of the operative complaint according to this well-established standard.

Plaintiff is a California corporation that prosecutes property tax refund claims for commercial property owners. Plaintiff is paid for such services based on a contingent fee generally equal to 30 or 40 percent of the property tax refund obtained. Plaintiff's contract with the property owner provides that its fee "is payable when a refund in the form of an actual refund check is received by the client from the county involved in the appeal or, if applicable, when the refund amount is applied directly by the county against a then delinquent property tax account for the property involved."

3

Kennedy-Wilson is "a publicly traded, New York Stock Exchange listed corporation," that is experienced and sophisticated in real estate transactions, and "describes itself to the public on its own internet website as a vertically integrated global real estate investment and services company with over $18.1 billion in assets under management."

KW Victory Land is a limited liability company and an "indirect subsidiary of Kennedy-Wilson doing business in the State of California."

In 2009, Christopher Alan was the controlling owner in Victory Glen Partners, LLC (Victory Glen) and Sir Francis Drake LP (SF Drake). Victory Glen owned five parcels of vacant land on Victory Boulevard in Los Angeles (vacant land). SF Drake was the owner of a nearby parcel on Victory Boulevard improved with a shopping center (shopping center). Mr. Alan, Victory Glen and SF Drake are not parties to this appeal, nor were they parties below.

The original mortgage holder on both the vacant land and the shopping center was the same Irish financial institution, Anglo Irish Bank. Sometime after 2011, Anglo Irish Bank assigned to National Asset Loan Management Limited (National Asset) all of its right, title and interest in the secured debts encumbering both the shopping center and the vacant land. Neither Anglo Irish Bank nor National Asset are parties to this appeal.

At some point after 2009, Mr. Alan caused SF Drake to hire plaintiff to prosecute a property tax refund claim as to the shopping center for the 2009 tax year. The appeal was heard by the Los Angeles County Board of Assessment Appeals (Board) and was successfully resolved in favor of SF Drake. SF Drake

4

paid plaintiff its 30 percent fee upon receipt of the tax refund check from the county.

Thereafter, Mr. Alan caused SF Drake to hire plaintiff to prosecute another refund claim as to the shopping center for the 2010 tax year, and also caused Victory Glen to hire plaintiff to prosecute property tax refund claims as to the vacant land for the 2009 and 2010 tax years. Plaintiff eventually obtained proposed settlements on each of these claims from the Los Angeles County Assessor's Office. The proposed settlements were adopted by the Board.

After the Board adopts a proposed settlement of a tax refund claim, "the information regarding any change in the assessed valuation is ultimately enrolled in the Assessor's records. The corrected valuation also is sent to the County Auditor's Office where it is used by the Auditor to compute the revised tax," plus any interest owed by the county to the property owner.

The settlement obtained by plaintiff for Victory Glen for the 2009 tax year reduced the assessed value of the vacant land by over $4 million. The resulting tax refund for the 2009 appeal was $58,324.88. The settlement of the 2010 tax year claim reduced the assessed value of the vacant land by over $6 million. The resulting tax refund for the 2010 appeal was $81,299.41.

Pursuant to its contracts with Victory Glen, plaintiff was owed a 30 percent fee from the refunds obtained as to the vacant land in the following amounts: $17,497.46 for the 2009 appeal and $24,389.82 for the 2010 appeal. The fees were payable when "a refund in the form of an actual refund check" was received by the property owner or when the refund amount was applied directly to any "delinquent property tax account for the property

5

involved." During this time period, plaintiff remained unaware of the assignment to National Asset of the secured debt as to the shopping center and the vacant land.

Sometime in 2012, SF Drake experienced financial difficulties. The "onset of those financial problems" caused National Asset to obtain a court-ordered appointment of a receiver. The receiver hired an experienced project manager to assist in managing the shopping center during the receivership proceedings. SF Drake gave the receiver copies of the notices from the Board about the tax refunds obtained by plaintiff with respect to the shopping center. The project manager contacted plaintiff on behalf of the receiver.

Throughout 2013, Mr. Alan pursued discussions with various investors about purchasing the shopping center and the vacant land. At the request of the receiver's project manager, Mr. Alan kept the receiver apprised of all sale discussions. By October, Mr. Alan had an interested investor, as well as a backup offer. However, National Asset, as the holder of the secured debt on the shopping center, rejected the proposed sale " 'because, among other things, the proceeds would have been insufficient to satisfy the secured debt.' "

"National Asset would not have been able to conclude that the proceeds of the rejected sale Mr. Alan had been pursuing would have been inadequate to satisfy the secured debt unless National Asset knew the secured debt total, including delinquent secured property tax amounts."

Thereafter, an affiliate of Kennedy-Wilson (KW Victory Plaza), acting "at the direction of" Kennedy-Wilson, "acquired the delinquent note and trust deed" on the shopping center from

National Asset and bought the shopping center at a trustee's sale on January 17, 2014.

On January 24, 2014, KW Victory Land acquired title to the vacant land in a nonjudicial foreclosure sale.

Defendants then "obtained written estimates of the delinquent property taxes and penalties due" on the vacant land. Defendants paid the amounts due and obtained certificates of redemption. The payment of delinquent taxes made by defendants on the vacant land "was the net amount due after the Tax Collector credited (i.e., applied) one hundred percent of the 2009 and 2010 assessment appeal year Refunds."

A few weeks later, the receiver filed a motion for approval of the final account as to the shopping center receivership. Kennedy-Wilson was on the service list. After a hearing on the motion in April 2014, the court awarded plaintiff its claim for fees for the services it rendered to SF Drake in prosecuting the tax refund claims for the shopping center.

Plaintiff's fees for successfully prosecuting the tax refund claims for the vacant land on behalf of Victory Glen remained unpaid.

In its 2015 publicly released annual report, Kennedy-Wilson reported its acquisition by foreclosure of a retail shopping center in Van Nuys, California, along with vacant land, recognizing a $3.7 million gain.

As sophisticated real estate investors, defendants would have conducted a "thorough due diligence" as to the secured debt encumbering any land to be acquired. "[S]tandard due diligence for a promissory note purchase . . . would have involved very careful examination of real property taxes for [the vacant land]

7

because such taxes, if in default, acquire lien priority in California over outstanding secured mortgage debt."

Further, because industry practice provides that a trustee under a deed of trust orders a trustee's sale guarantee "one hundred twenty-five days before the anticipated trustee's sale date," which describes all liens, encumbrances and other information pertinent to the foreclosure, defendants "were subject to inquiry notice to examine the trustee's sale guarantee before ever buying the secured debt."

"[B]ecause a notice of default already had been filed in the records of the Los Angeles County Recorder" concerning the vacant land when defendants acquired the secured debt, defendants "either knew of that notice of default or were charged with constructive notice of it under California law."

Defendants were informed by the records obtained from National Asset, by conducting their own due diligence, or by the receiver's project manager during the efforts to dispose jointly of the vacant land and the shopping center that the property tax valuations "had been contested by the property owner" using plaintiff "as its authorized representative."

Defendants were aware when they decided to purchase the secured debt on the vacant land that plaintiff had prosecuted the tax refund claims on behalf of Victory Glen on a contingent fee basis.

Plaintiff succeeded in having the property taxes for the vacant land reassessed and reduced, a benefit that inured to the benefit of the property owner. Defendants accepted those benefits when they acquired ownership and paid the delinquent property taxes in an amount reduced by the county's application of the entire refund amount to the balance owed. Defendants

8

benefitted by having the entirety of the refund amounts used to offset the amount of taxes they would have otherwise been obliged to pay as the new owners of the property. Defendants were unjustly enriched in the amount of plaintiff's unpaid contingent fee of $41,887.28.

After losing the vacant land to KW Victory Land in the foreclosure proceedings, Victory Glen lacked any assets and ceased doing business, denying plaintiff "any remedy at law to recover its fees."

Plaintiff filed this action against defendants on September 27, 2016, pleading causes of action for unjust enrichment and conversion. Defendants appeared by way of a demurrer, contending the complaint failed to state sufficient facts as to either cause of action.

In opposing the demurrer, plaintiff filed a request for judicial notice of the certificates of redemption from the Los Angeles County Tax Collector for the vacant land obtained by defendant KW Victory Land in 2014. The certificates acknowledged that the payments made included tax delinquencies from the 2009 and 2010 tax years. The court granted plaintiff's request for judicial notice.

After an unreported hearing, the court sustained defendants' demurrer without leave to amend, reasoning the complaint contained no facts that could establish the receipt and retention of the benefit conferred by plaintiff was unjust, or that defendants took those benefits with notice of plaintiff's claim. A judgment of dismissal was entered March 24, 2017.

This appeal followed. At defendants' request, we permitted supplemental briefing after oral argument to allow the parties to

discuss section 25 of the Restatement Third of Restitution and Unjust Enrichment (2011) (hereafter section 25).

## DISCUSSION

Generally, one who is unjustly enriched at the expense of another is required to make restitution. (*First Nationwide, supra*, 11 Cal.App.4th at p. 1662; see also Rest.3d Restitution and Unjust Enrichment, *supra*, § 1.) The elements of a cause of action for unjust enrichment are simply stated as "receipt of a benefit and unjust retention of the benefit at the expense of another." (*Lectrodryer v. Seoulbank* (2000) 77 Cal.App.4th 723, 726; accord, *First Nationwide*, at pp. 1662-1663.)

The complaint alleges sufficient facts showing a benefit conferred upon defendants by plaintiff. "The term 'benefit' 'denotes any form of advantage.' " (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51.) "[T]he benefit that is the basis of a restitution claim may take any form, direct or indirect. It may consist of services as well as property. A saved expenditure or a discharged obligation is no less beneficial to the recipient than a direct transfer." (Rest.3d Restitution and Unjust Enrichment, *supra*, § 1, com. d, p. 7.)

Here, plaintiff alleged it successfully prosecuted two property tax refund claims on behalf of Victory Glen that resulted in a reduction in the assessed value of the vacant land by millions of dollars for the 2009 and 2010 tax years. The reduction in assessed value resulted in refunds totaling $139,624.29. Under plaintiff's contract with Victory Glen, plaintiff was owed 30 percent of those funds (or $41,887.28) upon receipt by Victory Glen of a refund check from the county, or payment in that amount when the refund proceeds were applied by the county to reduce the amount of any delinquent taxes owed.

10

Defendants do not meaningfully contest there are facts stating a benefit conferred. Rather, defendants, as they successfully argued below, contend there are insufficient facts showing that the retention of that benefit was unjust. We are not persuaded.

Section 25 provides that where a "claimant renders to a third person a contractual performance for which the claimant does not receive the promised compensation, and the effect of the claimant's uncompensated performance is to confer a benefit on the defendant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." (*Id.*, subd. (1), p. 368.) The lack of a contractual relationship between the restitution claimant and the defendant is not a bar.

In such circumstances, restitution is required "only if the following three conditions are met: [¶] (a) Liability in restitution may not subject the defendant to a forced exchange . . . . This condition is likely to be satisfied if the benefit realized by the defendant [¶] . . . [¶] . . . saves the defendant an otherwise necessary expense . . . . [¶] (b) Absent liability in restitution, the claimant will not be compensated for the performance in question, and the defendant will retain the benefit of the claimant's performance free of any liability to pay for it. [¶] (c) Liability in restitution will not subject the defendant to an obligation from which it was understood by the parties that the defendant would be free." (§ 25, subd. (2), p. 368, citation omitted.)

Plaintiff has alleged sufficient facts to establish these three elements. Defendants obtained the benefit of plaintiff's services by paying less in delinquent taxes than they would have been required to pay upon acquiring the property. Due to plaintiff's

11

work in procuring the refund, defendants saved over $40,000 in delinquent taxes they otherwise would have had to pay. Plaintiff's work saved them an otherwise necessary expense of assuming ownership of the property. Moreover, "it is not inequitable to require [defendants] to pay money" for those benefits despite the lack of a prior agreement. (§ 25, com. c, p. 373.) Even if defendants are required to pay plaintiff its fee, they will still have saved $97,000 in property taxes that would have been owed had plaintiff not procured the refunds for the prior owner. Plaintiff has no remedy at law against the former owner because the foreclosure proceedings in which defendants acquired the property left the former owner with no assets. And, there are no facts showing any agreement between the parties that defendants would be free of any obligation to pay plaintiff.

At oral argument and in their supplemental brief, defendants take issue with our reliance on section 25, arguing that no California court has cited it as authority, and it would be inconsistent with California law to find section 25 imposes liability on defendant in this case. We find no merit in either argument.

California courts have long relied on the American Law Institute's Restatements for guidance. (*Canfield v. Security-First Nat. Bank* (1939) 13 Cal.2d 1, 30-31 ["Although it is true as urged by respondents that the restatement does not constitute a binding authority, considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an augmentative authority."].) The late Bernard E. Witkin described the Restatements as "the most commonly used, and certainly the most authoritative, of all

12

nonjudicial sources of principles of law." (Witkin, Manual on Appellate Court Opinions (1977) § 68, p. 111.)

California law on unjust enrichment is not narrowly and rigidly limited to quasi-contract principles, as defendants contend. "[T]he doctrine also recognizes an obligation *imposed* by law regardless of the intent of the parties. In these instances there need be no relationship that gives substance to an implied intent basic to the 'contract' concept, rather the obligation is imposed because good conscience dictates that under the circumstances the person benefited should make reimbursement." (*Kossian v. American Nat. Ins. Co.* (1967) 254 Cal.App.2d 647, 650 (*Kossian*).)

In *Kossian*, the plaintiff contracted to perform cleanup and debris removal services for a property owner who had suffered damage due to a fire. The owner's property insurance policies included coverage for such work. (*Kossian*, *supra*, 254 Cal.App.2d at p. 648.) The defendant was the beneficiary under a deed of trust on the property and had no knowledge of the contract between the plaintiff and the property owner. (*Ibid*.) After the plaintiff had fully performed under the contract, the property owner filed for bankruptcy without paying the plaintiff, and thereafter assigned his interest in the insurance policies to the defendant in accordance with the deed of trust. (*Ibid*.) The defendant submitted loss claims to the insurance company and eventually received payment that included "at least a part of the cost of debris removal and demolition." (*Ibid*.)

The defendant rejected the plaintiff's request for payment for services rendered, arguing, like defendants here, that there was "no privity of relationship between it and [the] plaintiff, and no fraud or deceit [on its part] alleged or proved." (*Kossian*,

13

*supra*, 254 Cal.App.2d at p. 649.)  The defendant contended it was therefore entitled to retain the benefit provided to the property by the plaintiff's work, as well as the insurance proceeds.  (*Ibid*.)

Noting the lack of a California case directly on point, *Kossian* aptly explained that "[l]ack of precedent applicable to the facts peculiar to this case is not surprising[.] . . .  [T]he authors of the Restatement recognize that the essential nature of equity cases concerned with problems of restitution makes definitive precedent unlikely." (*Kossian*, *supra*, 254 Cal.App.2d at p. 650.) Relying on general equitable principles, *Kossian* reversed the summary judgment in favor of the defendant, holding that "[t]he question, simply stated, is whether in a jurisdiction that recognizes the equitable doctrine of unjust enrichment one party should be indemnified twice for the same loss, once in labor and materials and again in money, to the detriment (forfeiture) of the party who furnished the labor and materials.  We conclude that the doctrine of unjust enrichment is applicable to the facts of this case, and that [the] plaintiff is entitled to reimbursement out of the insurance proceeds." (*Id*. at p. 651.)

The result reached in *Kossian* embraces the equitable principle set forth in section 25.  Both section 25 and *Kossian* support the result we reach here.

Finally, plaintiff's complaint also stated facts that, if proven, are sufficient to defeat a claim that defendants were bona fide purchasers without notice of plaintiff's claim.  "[A] bona fide purchaser is generally not required to make restitution." (*First Nationwide*, *supra*, 11 Cal.App.4th at p. 1663.)  But, "[a] transferee with knowledge of the circumstances surrounding the unjust enrichment may be obligated to make restitution."

14

(*County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1279.)

For a defendant to be " 'without notice' " means to be "without notice of the facts giving rise to the restitution claim." (Rest.3d Restitution and Unjust Enrichment, *supra*, § 69, subd. (1), p. 601.) "A person has notice of a fact if the person either knows the fact or has reason to know it. [¶] . . . A person has reason to know a fact if [¶] (a) the person has received an effective notification of the fact; [¶] (b) knowledge of the fact is imputed to the person by statute . . . or by other law (including principles of agency); or [¶] (c) other facts known to the person would make it reasonable to infer the existence of the fact, or prudent to conduct further injury that would reveal it." (*Id.,* subds. (2), (3), p. 601.)

Plaintiff alleged numerous facts demonstrating that defendants knew or had reason to know of plaintiff's claim for fees based on its work in procuring the property tax refunds for both the shopping center and the vacant land, and that plaintiff had worked on a contingent fee basis. Plaintiff adequately alleged that defendants were sophisticated real estate investors and that in the course of performing ordinary due diligence for the acquisition of commercial properties in foreclosure defendants would have discovered the facts related to plaintiff's claim for restitution. Whether plaintiff can prove those facts is beyond the scope of this appeal. Plaintiff has pled sufficient facts to survive demurrer.

As for the conversion cause of action, the demurrer was properly sustained. " 'Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' " (*Fischer v. Machado*

15

(1996) 50 Cal.App.4th 1069, 1072.) There is no act of dominion by defendants alleged. According to plaintiff's allegations, defendants never had any dominion or control over the tax refund. The county applied the refund to reduce the amount of the tax delinquency defendants had to pay upon assuming ownership of the property. Because plaintiff has not stated any facts that could be alleged to cure that defect, the demurrer was properly sustained to the conversion claim without leave to amend.

## DISPOSITION

The judgment of dismissal is reversed and set aside and the action is remanded to the superior court for further proceedings consistent with this opinion.

The superior court is directed to issue an order vacating its ruling sustaining the demurrer as to the cause of action for unjust enrichment, issue a new order overruling the demurrer as to the unjust enrichment cause of action, and order defendants to answer. The court's order sustaining the demurrer to the conversion cause of action is affirmed.

Plaintiff and appellant Professional Tax Appeal shall recover its costs of appeal.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.          DUNNING, J.*

---

*      Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.