Filed 7/21/22  Williams v. Vucetin CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STACIE WILLIAMS,<br><br>      Plaintiff, Cross-defendant and Appellant,<br><br>      v.<br><br>PETAR VUCETIN and HEATHER VUCETIN, as Trustees, etc., et al.,<br><br>      Defendants, Cross-complainants and Respondents. | B314758<br><br>(Los Angeles County Super. Ct. No. 20STCV30308) |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Law Offices of David L. Amkraut, David L. Amkraut; Law Offices of Harold C. Klaskin and Harold C. Klaskin for Plaintiff, Cross-defendant and Appellant.

Meylan Davitt Jain Arevian & Kim, Vincent J. Davitt and Anita Jain for Defendants, Cross-complainants and Respondents Petar Vucetin and Heather Vucetin, as trustees of the Vucetin Living Trust, dated October 30, 2014, and Cedars-Sinai Medical Center.

————————————————

Stacie Williams appeals from an order denying her special motion to strike (Code Civ. Proc., § 425.16; anti-SLAPP statute)[1] the cross-complaint filed by Petar Vucetin and Heather Vucetin, as trustees of the Vucetin Living Trust, dated October 30, 2014 (the Vucetins) and Cedars Sinai Medical Center (Cedars).[2] Stacie, individually and as the successor trustee of the Thomas P. Williams Revocable Living Trust, dated November 23, 2015 (Williams Trust), filed this action in August 2020 alleging real estate agent Jenero Jefferson manipulated Stacie's elderly and vulnerable father Thomas into selling the Williams family home to Jefferson in August 2017 for significantly less than its value.

In July 2019 the Vucetins purchased the property from a corporation controlled by Jefferson. Stacie asserted a cause of action for declaratory relief against the Vucetins, Cedars (which provided a loan for the purchase secured by a deed of trust), and others, to void the transfers. The Vucetins and Cedars (Vucetin parties) filed a cross-complaint against Stacie to quiet title, in

————————————————

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn 2.) All further statutory references are to the Code of Civil Procedure.

[2] We refer to Stacie Williams and her father Thomas Williams by their first names to avoid confusion.

2

which they also asserted causes of action for tort of another, negligence, fraudulent concealment, and unjust enrichment based on Stacie's alleged involvement in the sale of the home to Jefferson and her failure earlier to challenge the transaction. The trial court denied Stacie's motion to strike the cross-claims because the claims did not arise from protected activity. In addition, finding Stacie's motion was frivolous, the court awarded the Vucetin parties $8,636 in attorneys' fees.

On appeal, Stacie contends the trial court erred because the challenged cross-claims arose from protected activity in that they would not exist but for Stacie's filing the action, and further, the Vucetin parties did not show probability of success on the merits. In addition, the court should not have awarded attorneys' fees because Stacie's motion was not frivolous. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Thomas's Sale of the Property to Jefferson*[3]

The property at issue is a house built in 1926 on a residential lot on South Redondo Boulevard in the City of Los Angeles (the property). In 2013 Stacie, as successor trustee of the Gwendolyn Marie Ludd Revocable Trust, conveyed the property to "Thomas P. Williams, A Widower." The record does not reflect any consideration.[4] Thomas was then 85 years old. On

---

[3]    The factual background is taken from the undisputed facts alleged in the first amended complaint, the cross-complaint, and the public property records attached as exhibits to the pleadings.

[4]    The grant deed stated the transfer tax was $0.00 computed on the full value of the property conveyed. Documents filed with

3

November 23, 2015 Thomas created the Williams Trust, for which he was a beneficiary and sole trustee. Thomas recorded a transfer of the property to the Williams Trust on January 4, 2016. Later in 2016 (when he was 88 years old) Thomas obtained a loan on the property secured by a deed of trust (the "reverse mortgage"). Thomas died in April 2020 at the age of 92.

Jefferson is a real estate agent affiliated with Nationwide Real Estate Executives (Nationwide). As alleged, Jefferson owns and controls a corporation called Charity Prime Realty (Charity). In May 2017 Thomas and Jefferson executed a written residential purchase agreement for the Williams Trust to sell the property to Jefferson for $660,000. Nationwide, through Jefferson, served as both the seller's and buyer's agents.

Stacie alleged Jefferson and Nationwide solicited Williams to sell them the property, and Williams (then 89) was "in poor health, legally blind, had deteriorating hearing, was easily persuaded, generally confused and did not understand" what Jefferson and Nationwide intended. The Vucetin parties in their cross-complaint alleged Stacie invited Jefferson to sell the property, Stacie negotiated the terms of the sale, and "while being fully aware of the sale and intending to profit from it, Stacie . . . actively encouraged Thomas to sign the sale-related documents." Moreover, an addendum to the escrow instructions added Stacie's daughter, Nahima Barnes, as an additional seller. On August 10, 2017 a grant deed was recorded reflecting transfer of the property to Jefferson. The proceeds of the sale of the

the special motion to strike indicate Stacie inherited the property from her mother Gwendolyn, who lived with Thomas and raised Stacie and her siblings there. Stacie continued to live at the property with Thomas until it was sold to Jefferson.

property were distributed as follows: $478,218 to pay off the loan; $64,957 to Barnes; $29,000 to the Williams Trust; $15,818 to Stacie; $39,600 in commissions to Nationwide; $15,000 to Charity as a loan repayment; $8,000 to pay off utility and home repair bills; and about $8,100 in escrow and title fees.

In November 2017 Jefferson transferred the property to Charity. A grant deed reflecting the conveyance was recorded on December 15, 2017.

B.     *Charity's Sale of the Property to the Vucetins*

Around May 2019 Jefferson and Nationwide listed the property for sale for $1,230,000. The listing stated the property had been "'[r]ecently remodeled with everything being replaced down to the studs,'" including new wiring, flooring, appliances, windows, and heating and cooling. The Vucetins entered into a sales agreement with Charity to purchase the property at the listing price. A grant deed reflecting transfer of the property from Charity to the Vucetins was recorded on July 3, 2019. To finance the purchase, the Vucetins obtained a loan of $856,877 from Wells Fargo Bank, N.A. and a loan of $250,000 from Cedars. Deeds of trust securing the Wells Fargo loan as a first position lien and the Cedars loan in the junior position were recorded on July 3, 2019.

The Vucetin parties alleged that at the time of the Vucetins' purchase, title to the property showed no irregularities. Rather, title showed the property had been conveyed from Thomas, as trustee of the Williams Trust, to Jefferson in August 2017, and then to Charity in December 2017. There were no notices of pendency of action recorded against the property, and the Vucetins and Cedars were unaware of Stacie's contention

that Jefferson manipulated Thomas into selling the property below market value. The Vucetins had been living at the property as their primary residence since their purchase.

C.   *The Complaint*

Stacie filed this action on August 10, 2020 against Jefferson, Charity, Nationwide, the Vucetins, Wells Fargo, and Cedars. The operative first amended complaint asserted causes of action against Jefferson, Nationwide, and/or Charity for (1) negligence; (2) negligent supervision; (3) breach of fiduciary duty; (4) financial elder abuse; and (5) rescission. The complaint asserted a single cause of action for declaratory relief against all defendants, including the Vucetins, Cedars, and Wells Fargo.

Stacie alleged Thomas, due to his advanced age, poor health, and cognitive decline, was confused and did not understand what Jefferson and Nationwide wanted to do with the property. Exploiting Thomas's frailty and abusing their position of trust as his real estate agents, Jefferson and Nationwide failed to advise Thomas of the property's fair market value or to find a purchaser for market value, and instead, they engaged in a self-dealing transaction to purchase the property at a deep discount. Jefferson then transferred title to the property to Charity to conceal his and Nationwide's breaches of duty and deception.

As to the cause of action for declaratory relief, the complaint alleged the 2017 conveyance of the property from the Williams Trust to Jefferson was void ab initio, and Jefferson never obtained any interest in the property "as a result of the fraud, duress, undue influence and breach of fiduciary duties carried out by Jefferson, Nationwide and Charity." Because the

6

initial conveyance was void, the subsequent conveyances from Jefferson to Charity and from Charity to the Vucetins were void, as well as the deeds of trust provided to Cedars and Wells Fargo. The complaint prayed for a declaration voiding the transfers and declaring title to the property quieted in favor of Stacie as the successor trustee of the Williams Trust.

D.    *The Vucetin Parties' Cross-complaint*

On April 6, 2021 the Vucetin parties filed a cross-complaint against Stacie and Barnes alleging seven causes of action: (1) quiet title (by the Vucetins); (2) quiet title (by Cedars); (3) declaratory relief; (4) tort of another; (5) negligence; (6) fraudulent concealment; and (7) unjust enrichment.[5]  The Vucetin parties alleged they had no actual or constructive notice of any fraud in the property's chain of title and there were no notices of pendency of action recorded against the property. Thus, the Vucetins had full title to the property as bona fide purchasers.

In their fourth cause of action for tort of another, the Vucetin parties alleged that even if the allegations in Stacie's complaint were true, Stacie and Barnes engaged in self-dealing and committed elder abuse against Thomas because they were involved in and took cash payments from the sale of the property to Jefferson.  Further, if Stacie's "allegations in the [complaint] are true, [Stacie and Barnes] committed numerous torts against others which [have] put the Vucetins' fee title ownership of the

---

[5]    Wells Fargo also filed a cross-complaint against Stacie and Barnes, which is not at issue in this appeal; Wells Fargo is not a party to the appeal.  Barnes did not join in Stacie's special motion to strike and is also not a party to the appeal.

7

Property, and Cedars' . . . lien interest in it, in jeopardy, and forced the Vucetins/Cedars to defend themselves in this action."

In their fifth cause of action for negligence, the Vucetin parties alleged that even if the allegations of the complaint were true, Stacie and Barnes breached their duty to use due care in handling the August 2017 sale of the property, specifically, by allowing an infirm man to manage the Williams Trust's affairs, failing to read the transaction documents, and failing to obtain an appraisal of the property.  Stacie also neglected to file a lawsuit or take other action for three years to address the void transfer, thereby failing to provide notice to foreseeable purchasers during that time period.  Moreover, Stacie and Barnes failed to return profits from the 2017 sale.

The sixth cause of action for fraudulent concealment similarly alleged that by failing to file a lawsuit or record a notice of pendency of action, Stacie and Barnes "allowed the Property's record title to reflect that there was *no* fraud or irregularity with respect to the 2017 Property sale" and concealed the material facts of the fraud.  Moreover, if the allegations of Stacie's complaint were true, Stacie and Barnes "intended that bona fide purchasers and encumbrancers, including the lender who loaned Jefferson money to purchase the Property in August 2017 and the Vucetins/Cedars, would actually and justifiably rely on the absence of any indicia of fraud in the 2017 Property sale and Grant Deed relating to the sale."

Finally, the seventh cause of action for unjust enrichment alleged that "if [Stacie] were to prevail on [her] attempt to cancel the Vucetins' fee title ownership of the Property, or the Cedars' [deed of trust], that necessarily means that [Stacie and Barnes] were unjustly enriched by the supposedly invalid 2017 Property

8

sale transaction," in which more than $109,000 was paid in cash to Stacie, Barnes, and the Williams Trust, in addition to the more than $500,000 used to pay down the prior loan and other home-related debts.

Based on the torts allegedly committed by Stacie and Barnes, the Vucetins sought damages exceeding $1,230,000 and Cedars sought damages exceeding $250,000, plus exemplary and punitive damages.

E.      *Stacie's Special Motion To Strike*

On May 21, 2021 Stacie filed a special motion to strike the fourth, fifth, sixth, and seventh causes of action of the cross-complaint under section 425.16. In her five-page memorandum, Stacie quoted paragraph 20 of the cross-complaint, in which the Vucetin parties alleged, "'On August 10, 2020—over 13 months after the Vucetins' purchase of the Property and Cedars'[s] extension of its $250,000 Cedars Loan—Plaintiff first challenge[d] the chain of title by filing a Complaint. Plaintiff asserts there was alleged fraud in connection with the Trust's August 2017 sale of the Property from Plaintiff to Jefferson. The challenge came 3 years after Plaintiff's sale of the Property." (Boldface and underscoring omitted.) Based on this allegation but without further explanation, Stacie argued, "There can be no serious question that the [cross-claims] arise from the filing of this action. The Vucetins' and Cedars'[s] claims for monetary damage all depend on Ms. Williams prevailing on her claims." Further, because Stacie "unquestionably" satisfied the moving party's prima facie burden to show the challenged claims arose from protected activity under section 425.16, the burden shifted

9

to the Vucetin parties to establish a probability of success on those claims, which they would be unable to do.[6]

In their opposition, the Vucetin parties argued their cross-claims did not arise from Stacie's filing of the lawsuit in August 2020. Rather, the causes of action arose from Stacie's conduct in 2017 with respect to transfer of the property to Jefferson, as well as her failure for three years to file a lawsuit or take any other action to challenge the transfer of title. As to the second step of the anti-SLAPP analysis, the Vucetin parties argued they had shown a likelihood of prevailing on the merits because had Stacie not delayed prosecuting her lawsuit to expose the fraud, they would not have taken an interest in the property in 2019.

---

[6]     Stacie's special motion to strike was supported by an attorney declaration and a request for judicial notice, both requesting the trial court take notice of the first amended complaint filed on July 10, 2019 in *Ashanti Smith et al. v. Jenero Jefferson et al.* (Super. Ct. Los Angeles County, 2019, No. 19STCV24076). That action, in which Stacie was not a party, involved claims for fraud and elder abuse against Jefferson in connection with an unrelated transaction, but it also included detailed allegations concerning Jefferson's manipulation of Thomas and Stacie. As alleged in that complaint, Stacie was Thomas's "roommate and power of attorney," and she too was vulnerable and manipulated by Jefferson to believe sale of the property to him was necessary to avoid the loan and property tax liabilities that would grow to a point that the Williams Trust would lose the property. Convinced by Jefferson that he would later restore ownership to Stacie, Stacie helped Jefferson arrange a meeting with Thomas to sell the property to Jefferson, and the proceeds paid to Stacie were to help her make a downpayment for a new home in Arizona. The *Smith* action was dismissed on July 10, 2020 for lack of prosecution and is not relevant to this appeal.

Further, "if Stacie is successful in proving that the 2017 sale was the product of elder abuse and fraud, then she also committed elder abuse by arranging for the sale in the first place, personally profiting from it and retaining all those profits for 4 years." The Vucetin parties also argued that because the special motion to strike was frivolous, the court should award them $8,636 for their attorneys' fees in preparing the opposition.[7] The Vucetin parties submitted declarations from Heather Vucetin, Cedar Sinai's in-house counsel; the Vucetin parties' litigation attorney; an appendix of evidence, including Stacie's discovery responses; and a request for judicial notice of public records related to the property.

On June 16, 2021 Stacie filed a five-page reply memorandum, evidentiary objections, and an attorney declaration in support of her request for $6,860 in attorneys' fees, but she did not submit evidence to rebut the Vucetin parties' evidentiary showing on the merits of the cross-claims.

After a hearing, on June 23, 2021 the trial court denied Stacie's special motion to strike.[8] As set forth in the court's tentative ruling adopted as its order, the court found Stacie failed to make a threshold showing the Vucetin parties' causes of action for tort of another, negligence, fraudulent concealment, and unjust enrichment arose from protected petitioning activity under

---

[7] The Vucetin parties' attorney Anita Jain submitted a declaration stating she had nearly 25 years of continuous practice experience, spent in excess of 25.4 hours preparing the opposition, and worked at a reduced rate of $340 per hour.

[8] The trial court granted the parties' respective requests for judicial notice and overruled Stacie's evidentiary objections. Stacie does not challenge these rulings on appeal.

section 425.15, subdivision (e).  Rather, "[t]he cross-complaint is clearly based on [Stacie's] acts that occurred *before* the filing of the complaint, not the filing of the complaint itself."  Because the first step of the anti-SLAPP statute was not satisfied, the court did not reach the probability of the Vucetin parties prevailing on the merits of their cross-claims.

The trial court found the special motion to strike was "totally and completely without merit, such that any reasonable attorney would agree that it is totally devoid of merit" and "frivolous."  The court observed Stacie's motion was based on a single paragraph of the cross-complaint "with no explanation" why that paragraph demonstrated the cross-claims arose from protected activity.  Under section 425.16, subdivision (c)(1), the court awarded the Vucetin parties their requested fees in the sum of $8,636, noting the amount of the requested attorneys' fees was "supported and unquestioned."

Stacie timely appealed.

## DISCUSSION

A.    *Special Motions To Strike*

A cause of action arising from an act in furtherance of a defendant's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike unless the plaintiff demonstrates a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1); see *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)  An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection

12

with a public issue'" includes, in relevant part, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra*, 11 Cal.5th at p. 1009; *Monster Energy v. Schechter, supra*, 7 Cal.5th at p. 788.)

"We determine de novo whether any of the acts from which challenged claims arise are protected under these provisions." (*Bonni, supra*, 11 Cal.5th at p. 1009; accord, *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park*, at p. 1067.)

13

B.      *Stacie Failed To Carry Her Burden To Show the Cross-claims Arose from Protected Activity*

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062; accord, *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*).) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park,* at p. 1063; accord, *Cotati,* at pp. 76-77.) "Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park,* at p. 1063, italics omitted; accord, *Bonni, supra,* 11 Cal.5th at p. 1009 ["The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."].) In analyzing whether a claim arises from protected activity, reviewing courts are "attuned to and have taken care to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park,* at p. 1064.)

14

Stacie contends the conduct giving rise to the cross-claims for negligence, tort of another, fraudulent concealment, and unjust enrichment arose from protected activity because the cross-claims were expressly predicated upon the filing of her complaint, which constituted a written or oral statement made before a judicial proceeding under section 425.16, subdivisions (b)(1) and (e)(1).[9] Although Stacie's analysis is cursory—she devotes only two sentences of her opening brief to the issue—she argues that for each cross-claim, the Vucetin parties "allege that [Stacie's] alleged breaches flow from her filing of this action," and further, because the Vucetin parties "seek recovery as damages the attorney's fees incurred in this action," the Vucetin parties would not have incurred the fees "[b]ut for the filing of this action." In the trial court, Stacie argued in a similar vein that "[t]he Vucetins' and Cedars'[s] claims for monetary damage all depend on [Stacie] prevailing on her claims."

Stacie's arguments are deeply flawed. The Supreme Court has cautioned against construing the "'arising from'" language in section 425.16, subdivision (b)(1), to mean "'in response to,'" because such a reading "would in effect render all cross-actions potential SLAPP's." (*Cotati, supra*, 29 Cal.4th at p. 77 [action for

---

[9] There is no dispute "'''the basic act of filing litigation''''" constitutes protected activity under section 425.16, subdivisions (b)(1) and (e)(1). (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90; accord, *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113 ["'"Any act"' under section 425.16, subdivision (b)(1) 'includes communicative conduct such as the filing, funding, and prosecution of a civil action.'"].)

declaratory relief filed in state court to gain more favorable forum in which to litigate identical dispute over constitutionality of rent stabilization ordinance under consideration in federal court did not arise from protected activity]; see *Kajima Engineering and Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [rejecting argument cross-complaint for breach of reconstruction contract arose from protected activity because it was filed "in retaliation" for filing of complaint for non-payment for work under contract].) Here, each cross-claim arises from Stacie's and Barnes's involvement in the 2017 sale of the property and their delay in filing a lawsuit for the following three years, not the later filing of this action.

As to the Vucetin parties' negligence claim, "'[t]he elements of a cause of action for negligence are: the "defendant had a duty to use due care, that he [or she] breached that duty, and that the breach was the proximate or legal cause of the resulting injury."'" (*Day v. Lupo Vine Street, L.P.* (2018) 22 Cal.App.5th 62, 69; accord, *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) In support of the negligence claim, the cross-complaint included the prefatory language that "[i]f [Stacie's] allegations in the [complaint] are true," then Stacie and Barnes breached their duty of care "by failing to use due care in managing their activities relating to [the property] at the time of its sale in August 2017." More specifically, as discussed, Stacie and Barnes allowed 89-year-old Thomas to serve as the trustee of the Trust and manage its affairs, and Stacie and Barnes failed to read the sales documents and obtain an appraisal of the property. Further, they retained the benefits they received from the sale and failed to file a lawsuit for three years, thereby depriving third party

16

purchasers and lienholders of notice of Jefferson and Nationwide's fraud in connection with the 2017 sale.

It is clear from these allegations that Stacie's and Barnes's alleged conduct that formed the basis of liability for the negligence cross-claim occurred prior to and independent of Stacie filing the action.[10] The Vucetin parties' incorporation of Stacie's allegations into their cross-complaint simply explained the details of the fraudulent property sale as alleged by Stacie, but in no way was Stacie's filing of the complaint the conduct underlying the breach.[11] (See *Park, supra*, 2 Cal.5th at p. 1065.) Indeed, the Vucetin parties could have predicated their negligence claim on the identical allegations of Stacie's conduct in 2017 without referring to Stacie's complaint.

An analogous analysis applies to the Vucetin parties' tort of another claim. "The tort of another doctrine, sometimes called the third-party tort doctrine, provides that a party may be awarded attorney fees in a situation where one person commits a wrongful act that he or she can reasonably foresee would cause another to have to defend or prosecute a lawsuit involving a third party." (*Gateway Bank, F.S.B. v. Metaxas* (2021) 65 Cal.App.5th

---

[10] We assume for our analysis Stacie owed the Vucetin parties a duty of care, as alleged. (See *Navellier v. Sletten, supra*, 29 Cal.4th at p. 94 [sufficiency of claims "'is an issue which the [party asserting the claims] must raise and support in the context of the discharge of [its] [second-step] burden to provide a prima facie showing of the merits of [its] case.'" (Italics omitted.)].)

[11] The cross-complaint also included allegations not based on Stacie's complaint, including that "while being fully aware of the sale and intending to profit from it, Stacie and Barnes actively encouraged Thomas to sign the sale-related documents."

17

71, 87, fn. 9, citing *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618, 620 ["A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred."].) The Vucetin parties' tort of another claim is predicated on the same factual allegations as their negligence claim—that Stacie and Barnes were involved in the 2017 transaction, financially benefited from the sale of the property, and failed for three years to take legal action to address Thomas's competence or the fraudulent sale, which foreseeably caused the Vucetin parties to file claims to protect their interests. The cross-claim asserted it was this conduct of Stacie and Barnes (not the filing of the lawsuit) that placed the Vucetins' title and Cedar's first position lien interest in jeopardy. Thus, as with the negligence claim, the Vucetin parties could have alleged the identical facts concerning Stacie's 2017 conduct and subsequent failure to take action to support liability for tort of another without reference to Stacie's complaint.

So too with the fraudulent concealment cross-claim. "The elements of a cause of action for fraudulent concealment are: (1) concealment of a material fact; (2) by a defendant with a duty to disclose; (3) the defendant intended to defraud by failing to disclose; (4) plaintiff was unaware of the fact and would not have acted as it did had it known the fact; and (5) damages." (*Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 144; accord, *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162.) The Vucetin parties alleged that Stacie and Barnes intentionally

18

concealed from foreseeable purchasers and lienholders (including the Vucetin parties) that there was fraud in the 2017 sale of the property, and that by failing to take action prior to filing the complaint, Stacie and Barnes allowed title to the property to appear not to have any fraud or irregularity. Thus, the conduct giving rise to liability for fraudulent concealment necessarily occurred before and independent of Stacie filing the complaint. In fact, it was Stacie and Barnes's failure to give notice of the fraud prior to filing the complaint that gave rise to liability. That Stacie ultimately filed an action is only relevant as evidence she intentionally deceived subsequent purchasers.

Finally, "[t]he elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132; accord, *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238.) The Vucetin parties' cause of action for unjust enrichment incorporated their earlier allegations and alleged Stacie and members of her family received from the sale proceeds over $109,000 in cash and payment of over $500,000 of the Williams Trust's debt.[12] Further, if the sale transaction were

---

[12] The unjust enrichment cross-claim is not well pleaded, and it is not clear on what basis the Vucetin parties may recover from Stacie and Barnes the proceeds they received from the 2017 property sale even if the transaction and subsequent conveyances and deeds are voided. Further, a common law claim for unjust enrichment is generally not an independent cause of action, but rather, "is essentially an action for restitution." (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320.) "[R]estitution is a remedy and not a freestanding cause of action."

19

voided, Stacie and Barnes would be unjustly enriched by profiting from the "void/voidable" property sale transaction. In their prayer for relief, the Vucetin parties sought an order that Stacie and Barnes "disgorge their unjust enrichment, *i.e.*, the ill-gotten profits they obtained from the 2017 Property sale," plus costs of suit. Stacie's receipt of a benefit and unjust retention of the benefit at the expense of another (i.e., her "ill-gotten gains") therefore accrued independent of the filing of the complaint— from her concealment of the defects in the 2017 transaction from which she received a portion of the sales proceeds.

We recognize the Vucetin parties' cross-claims are premised on the assumption that Stacie would prevail on her causes of action to void the deed of trust and Cedars lien. Certainly, had Stacie not filed the action, the Vucetin parties would have had no need to file the cross-claims to protect their interests in the property. But this does not change the fact that the wrongful acts forming the basis for the cross-claims were the fraudulent conduct of Stacie and Barnes in 2017 and their failure to file a lawsuit for three years following the sale—not Stacie's filing of the lawsuit. Accordingly, at most, Stacie's lawsuit triggered the filing of the cross-claims to ensure that if Stacie prevailed, the Vucetin parties' interests would be protected. But as the Supreme Court explained in *Cotati*, "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Cotati, supra*, 29 Cal.4th

---

(*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 362.) Regardless of the validity of the claim, it was Stacie's burden to establish the conduct "'that gives rise to [her] asserted liability'" constituted protected speech or petitioning activity. (*Park, supra*, 2 Cal.5th 1057, 1063.) She has failed to meet her burden.

at p. 78.)  Because the cross-claims did not arise from protected activity, the trial court properly denied Stacie's special motion to strike.

C.      *The Trial Court Did Not Abuse Its Discretion in Awarding Attorneys' Fees to the Vucetin Parties*

"The anti-SLAPP statute requires the trial court to award reasonable attorneys' fees to a prevailing plaintiff pursuant to section 128.5 when the court determines that a defendant's anti-SLAPP motion was 'frivolous or . . . solely intended to cause unnecessary delay.'  (§ 425.16, subd. (c)(1) ['shall' award].)  Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit.  [Citation.]  An order awarding attorneys' fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), is reviewed under the abuse of discretion test."  (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450; accord, *Clarity Co. Consulting, LLC v. Gabriel* (2022) 77 Cal.App.5th 454, 465.)  The trial court did not abuse its discretion in finding Stacie's motion to strike was frivolous and awarding the Vucetin parties their attorneys' fees.

Stacie contends the trial court misconstrued the facts when it stated in its order that Stacie had cited to only one paragraph of the cross-complaint in her motion, when in fact she cited numerous paragraphs.  Although it is true Stacie cited multiple paragraphs of the cross-complaint in the "[s]tatement of the [c]ase" section of her memorandum in which she summarized the underlying dispute, Stacie's argument why the cross-complaint arose from protected activity cited only a single paragraph of the cross-complaint.

21

Further, Stacie contends the single paragraph of the cross-complaint she relied on was sufficient to show her motion was not frivolous. As discussed, in that paragraph the Vucetin parties alleged Stacie and Barnes first challenged the chain of title based on alleged fraud in the 2017 sale of the property to Jefferson by filing their complaint over 13 months after the Vucetins' purchase of the property and Cedars's extension of its $250,000 loan. Stacie argues this paragraph "establishes [the Vucetin parties] would not have filed the [c]ross-[c]omplaint but for [Stacie] having filed this action." But as discussed, the Supreme Court has made crystal clear that just because a cross-complaint is filed "in response to" a lawsuit, this does not mean it "arises from" that lawsuit under section 425.16. (*Cotati, supra*, 29 Cal.4th at p. 77.) The trial court did not abuse its discretion in finding both that Stacie's special motion to strike suffered from a dearth of citations and analysis, and her underlying legal argument was contrary to Supreme Court case law and patently frivolous.

## DISPOSITION

The order denying Stacie's special motion to strike under section 425.16 and awarding the Vucetin parties their attorneys' fees is affirmed.  The Vucetin parties are to recover their costs on appeal.


                                               FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.