Filed 5/13/216  Bonene v. Derakhshan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MELINDA BONENE, | B341063 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22VECV00452) |
| v. | |
| ASHKAN DERAKHSHAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed.

Ashkan Derakhshan, in pro. per., for Defendant and Appellant.

Bilal Law Group and Kamal A. Bilal for Plaintiff and Respondent.

# INTRODUCTION

Melinda Bonene agreed to rent a guest house from Ashkan Derakhshan. When Bonene saw the guest house, she liked its privacy and the adjacent covered patio area with a pool table. She understood the patio and pool table were private areas for the tenant of the guest house to use. As Bonene was moving in, Derakhshan told her that she would have to share the covered patio area with him and that she could only use the pool table if she invited him to play with her. Bonene was distressed by the news and told Derakhshan that she no longer wanted to rent the guest house. Derakhshan said he would refund the amount she paid (more than $17,000 in prepaid rent and deposits) if she moved out immediately. She did, but Derakhshan kept her money. Derakhshan then sent a letter to Bonene's employer falsely accusing her of engaging in abhorrent and racist behavior toward him and others.

Bonene sued Derakhshan for breach of contract, rescission, unjust enrichment, fraud, defamation, false light/invasion of privacy, and intentional infliction of emotional distress. At the court trial, the parties presented dramatically different accounts of what happened. The court ruled that Bonene's testimony was credible and that Derakhshan's was not. The court found in favor of Bonene on all causes of action except fraud and awarded her over $200,000, including $80,000 in punitive damages on her defamation cause of action.

Substantial evidence supported the trial court's decision, and Derakhshan has not demonstrated any prejudicial error. Therefore, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Bonene Leases Derakhshan's Guest House and Pays Six Months' Rent in Advance*

In September 2021 Bonene saw an advertisement for a guest house for rent in Tarzana. The advertisement said the guest house was on a gated property, allowed animals, included a pool table, and was very "'private.'" Derakhshan owned the guest house and lived in the main house on the property.

Bonene met Derakhshan at the guest house on September 5, 2021, and she decided to rent it. A covered patio area with a pool table was adjacent to the guest house. Bonene signed a lease and paid Derakhshan $17,100 (six months' rent, a security deposit, and a pet deposit) in exchange for a slight reduction in the monthly rent and an early move-in date. (The lease stated the tenancy would begin on October 1, 2021, but Derakhshan said Bonene could move in on September 20, 2021.)

B. *Bonene and Derakhshan Disagree About Certain Terms of the Lease*

Bonene got the keys to the guest house from Derakhshan on October 1, 2021 and began moving in the next day. On October 3, 2021 Derakhshan told Bonene that the patio outside the guest house was a common area she would have to share with him, that she could not use the pool table unless she invited him to play with her, and that she would have to have her mail delivered to his mailbox and he would deliver her mail to her. This information disturbed Bonene; she immediately told Derakhshan she wanted to terminate the lease. Bonene believed that, when she signed the lease, the patio area adjacent to the

3

guest house was a private area for her exclusive use, that she would be able to use the pool table without any preconditions, and that she would have a private mailbox. Derakhshan agreed Bonene could terminate the lease and said he would refund her money if she moved her items out of the guest house by October 5, 2021.

C. *Bonene Surrenders Possession of the Guest House, but Derakhshan Refuses To Refund Her Money*

Bonene moved out and returned the keys to Derakhshan on October 5, 2021. At some point before she returned the keys Derakhshan touched Bonene inappropriately, putting his finger on the nape of her neck and stroking her down to the middle of her back while saying, "You're blocking me in."

The situation took a dark(er) turn after that. Bonene was frightened of Derakhshan and reported his unwanted touching to the police. Derakhshan did not return any of Bonene's money, despite promising to do so. And Derakhshan sent a letter by email to Bonene's employer, Coldwell Banker, accusing Bonene of engaging in a range of racist behavior, including being a member of the Ku Klux Klan, and accusing Bonene's boyfriend, Larry Serraino, of breaking into Derakhshan's house.

The letter created problems for Bonene at work, and she had to go through the "humiliating process" of defending herself against Derakhshan's false accusations. Bonene was "'beyond embarrassed'" and feared her employer would terminate her employment. The stress of the situation caused her to cry frequently, have difficulty sleeping, and vomit.

D.    *Bonene Files This Action Against Derakhshan*

In March 2022 Bonene filed this action against Derakhshan, alleging causes of action for breach of contract and rescission, fraud, unjust enrichment, defamation, false light/invasion of privacy, and intentional infliction of emotional distress.  She alleged Derakhshan breached the lease and fraudulently induced her to enter the lease by misrepresenting that the covered patio area was private, rather than common, space.  She alleged Derakhshan was unjustly enriched because, though he agreed to terminate the lease and she returned the keys to the guest house on October 5, 2021, Derakhshan did not refund any of the $17,100 Bonene had paid him.  Regarding Derakhshan's letter to Coldwell Banker, Bonene alleged Derakhshan made knowingly false statements about her to her employer that defamed her, showed her in a false light, and caused her extreme emotional distress.  Bonene sought to rescind the lease and recover the $17,100 she paid to Derakhshan, compensatory damages, and punitive damages.

E.    *Bonene Prevails at Trial*

Bonene testified at trial about her discussions with Derakhshan on September 5, 2021, when she first saw and decided to rent the guest house.  She also testified about her interactions with Derakhshan after she returned the keys to the guest house.  She said Derakhshan accused her of breaking into his house and threatened to have her arrested.  Bonene was scared of Derakhshan, and she reported her concerns to the police and to her doctor.  The doctor prepared a report describing Bonene's condition, which included nausea, sleeplessness, and anxiety due to her interactions with Derakhshan.  When

Derakhshan learned of the report, he sent a letter to the doctor accusing her of committing fraud and threatening to use the legal system to harass her.  Bonene also denied making racially charged remarks about Derakhshan or anyone else.

Serraino testified about his impressions of the guest house and his interactions with Derakhshan.  He took pictures of the guest house in late September showing that the awning covering the patio area was attached to the guest house and that the pool table was just a few feet from the guest house, nearly blocking the path to the front door.  Serraino also corroborated Bonene's statements about the extreme emotional distress Derakhshan's actions caused her.

Derakhshan, who represented himself at trial, testified he told Bonene that the patio area was a common area and that she would have to pay an additional $200 per month if she wanted to use the pool table.  He also stated that, as Bonene was moving into the guest house, she "'treated him like a slave'" and "'machine gunned him with demands,'" texting him more than 400 times with unreasonable and harassing requests.  (The court reviewed the text messages and rejected Derakhshan's characterization of them.)  Derakhshan also claimed that Bonene "demonstrated her 'white supremacy' attitudes by demanding he surrender his entire property to her"; that she told him that she wanted to break the lease because she wanted to throw wild drug- and alcohol-fueled parties for clients using his pool and hot tub; that she threatened to falsely accuse him of raping her; and that she threatened to kill him, saying, "'You will find yourself in a bag in the desert with a gun to your head.'"  (The court did not find this testimony credible.)  Derakhshan also gave inconsistent testimony about the alleged break-in at his home.

In its 22-page statement of decision the trial court made credibility findings on each of the three witnesses. The court stated Bonene was "easily confused as a witness," but was "apologetic when she had trouble answering questions or had confused facts." The court found that Bonene's testimony was "candid, unexaggerated, and credible" and that her denial of Derakhshan's accusations of racist behavior was credible. The court also found Serraino's testimony was credible. In contrast, the court found Derakhshan was not "a credible witness on any issue." The court described Derakhshan as "belligerent in his conduct" toward Bonene, her attorney, and the trial court: "He was dismissive of the questions directed to him, contemptuous of the court process and appeared to view the proceedings as a game. His conduct in the courtroom, and as amply displayed in his communications with [Bonene's] employer and doctor, was that of a bully, willing to threaten people (including witnesses) if they did not agree with him. His testimony was self-serving, internally contradictory, and highly suspect." The court also said Derakhshan's testimony often appeared "delusional, paranoid, or deliberately fabricated to gain an advantage in this case."

The court ruled in favor of Bonene on all causes of action except fraud. The court ruled there was no meeting of the minds regarding a material term of the lease: whether the patio area adjacent to the guest house was a private or a common area. Therefore, the court ruled, both parties were entitled to rescind the lease, and Derakhshan was unjustly enriched by retaining the $17,100 in prepaid rent and deposits. On Bonene's defamation and false light causes of action, the court ruled the letter Derakhshan sent to Coldwell Banker included false and defamatory statements Derakhshan knew were untrue. The

7

court also ruled Derakhshan's statements in the letter to Coldwell Banker caused Bonene extreme emotional distress.

The court awarded Bonene $205,044. The court ruled Bonene was entitled to recover the $17,100 she paid Derakhshan, less $383 (prorated rent for October 1, 2021 to October 5, 2021). The court also awarded Bonene $8,327 in costs she incurred to obtain funds to secure a new apartment, $100,000 in emotional distress damages, and $80,000 in punitive damages.

The trial court filed a proposed statement of decision on May 1, 2024. Derakhshan filed lengthy objections to the court's statement of decision that disputed the court's summary of the testimony at trial and criticized the court's rulings. The court overruled Derakhshan's objections.

F.     *The Court Denies Derakhshan's Motion for New Trial, and Derakhshan Appeals*

Derakhshan filed a motion for new trial on the grounds of irregularity in the proceedings, excessive damages, and error in law (Code Civ. Proc., § 657, parts 1, 5, & 7). Regarding irregularity in the proceedings, Derakhshan argued that the court erroneously denied his motion to "correct" the trial date from March 15, 2024 to March 25, 2024; that the court unfairly found Bonene was a credible witness, but "found [Derakhshan] to be an absolute liar"; that the trial court's statement of decision "omitted . . . incriminating testimonies" by Bonene and Serraino, which purportedly disclosed Bonene's racist rants about her housekeeper and Derakhshan, Serraino's confession he broke into Derakhshan's house, and Bonene's admission she and Serraino spent several days waiting outside Derakhshan's property with the intent to attack him; that counsel for Bonene coached and

8

gave signals to Bonene and Serraino during their testimony to induce them to lie; and that the trial court prevented Derakhshan from cross-examining witnesses. Regarding damages, Derakhshan argued that Bonene owed him $11,024 in rent and $3,950 for property damage and other costs, which the court should have deducted from Bonene's recovery; that the damages the court awarded for defamation were excessive because Bonene did not show she lost any income after Derakhshan sent the letter to Coldwell Banker; and that the awards of $100,000 in emotional distress damages and $80,000 in punitive damages were "unfounded." And regarding error in law, Derakhshan generally criticized the court's statement of decision and the outcome of the trial.

The trial court denied Derakhshan's motion for new trial. The court ruled that it properly set and then reset the trial date, that its assessment of the witnesses' credibility was accurate, that counsel for Bonene did not coach any witnesses, and that the court allowed adequate time for both parties to cross-examine witnesses. The court also ruled substantial evidence supported its damages award and rejected Derakhshan's contention the statement of decision contained errors of law.

The trial court entered judgment in favor of Bonene on July 12, 2024. Derakhshan timely appealed.

## DISCUSSION

A. *Standard of Review*

On appeal from a judgment based on a statement of decision following a court trial, we "review questions of law de novo and we review the trial court's findings of fact under the

9

substantial evidence standard." (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791-792; see *Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 872-873.) "We construe findings of fact liberally to support the judgment; consider the evidence in the light most favorable to the judgment; draw all reasonable inferences in support of the findings; and infer that the trial court "'impliedly made every factual finding necessary to support its decision."'" (*Gajanan*, at p. 792; see *Rojas*, at p. 873.) We "give deference to the factual findings made by the trial court, where there is substantial evidence supporting them." (*Greif v. Sanin* (2022) 74 Cal.App.5th 412, 442; see *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061 ["When a finding of fact is attacked on the ground there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support it."].) "'It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.'" (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173; see *Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.)

The trial court's judgment is presumed correct, and the burden is on the appellant to demonstrate reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The reviewing court indulges all intendments and presumptions to support the judgment, and the appellant must affirmatively establish error. (*Denham*, at p. 564; *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 512.) "'"To prevail on appeal, an appellant

must establish both error and prejudice from that error.""'" (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 751.) "'[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citation.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial.'" (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020.)

Finally, in order to demonstrate error, "'"an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record."'" (*Audish v. Macias*, *supra*, 102 Cal.App.5th at p. 751.) Indeed, "[t]he absence of reasoned legal argument supported by citation to authority allows this court to treat the contention as forfeited." (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 39.)

B. *The Claimed Pretrial Errors Derakhshan Identifies Did Not Deprive Him of Due Process*

Derakhshan identifies a series of pretrial rulings he contends evidence a "broad[ ] pattern of procedural injustice." Derakhshan forfeited most of his arguments by failing to provide any legal analysis, failing to explain how the alleged errors were prejudicial, or both, and those arguments he has not forfeited are meritless.

For example, Derakhshan argues the trial court erred in refusing to hear his "properly filed motion to dismiss." Derakhshan did not file a motion to dismiss. The document he

cites is his answer to the original complaint, and it does not include a request to dismiss.

Derakhshan also argues that Bonene did not properly serve him with the complaint and that the court erred in entering his default. Any error, however, was harmless because the court vacated Derakhshan's default and allowed Derakhshan to file an answer.

Derakhshan argues the court erred in allowing Bonene to file a first amended complaint. By failing to provide any relevant legal authority or analysis, however, Derakhshan forfeited his challenge to the court's order granting Bonene leave to file her first amended complaint. (See *Siskiyou Hospital, Inc. v. County of Siskiyou*, *supra*, 109 Cal.App.5th at p. 39.)

Derakhshan also asserts the court erred in denying him "the right to obtain discovery relevant to the new claims" in Bonene's amended complaint. The record does not support Derakhshan's assertion. In granting in part Derakhshan's motion to compel further responses to discovery he served after Bonene amended her complaint, the court stated: "While the minute order on the hearing granting the trial continuance was silent on the issue, the court intended to continue the deadlines for discovery, at a minimum, based on the new trial date. To have ruled otherwise, would have severely prejudiced [Derakhshan's] right to conduct discovery on the amended complaint. Accordingly, the discovery here was served in a timely manner." Thus, Derakhshan had the opportunity to conduct, and in fact conducted, discovery after Bonene filed her first amended complaint.

Derakhshan also repeatedly argues the trial court failed to provide him with adequate notice of rescheduled trial dates and,

in particular, of the March 15, 2024 trial date.  But Derakhshan was in court on December 28, 2023 and stipulated to the March 15, 2024 trial date; he cannot claim he lacked notice.

C.    *Substantial Evidence Supported the Judgment*

1.    *Derakhshan Forfeited His Argument Substantial Evidence Did Not Support the Judgment*

"On appeal challenging sufficiency of the evidence, appellant's opening brief must set forth all the material evidence on point, not merely state facts favorable to appellant.  [Citation.] . . . [Citation.]  When appellant's opening brief states only favorable facts, ignoring evidence favorable to respondent, the appellate court may treat the substantial evidence issues as [forfeited] and presume the record contains evidence to sustain every finding of fact."  (*LA Investments, LLC v. Spix, supra*, 75 Cal.App.5th at p. 1061.)  "'As with all substantial evidence challenges, an appellant challenging [a finding of fact] must lay out the evidence favorable to the other side and show why it is lacking.  Failure to do so is fatal."  (*Slone v. El Centro Regional Medical Center, supra*, 106 Cal.App.5th at pp. 1173-1174.)

Derakhshan disregards the substantial evidence standard of review.  For example, he discusses his trial exhibits at length (and does not mention Bonene's trial exhibits) and complains the trial court disregarded his exhibits and failed to discuss his evidence in its statement of decision.  When discussing Bonene's individual causes of action, Derakhshan focuses only on the evidence favorable to his position, without discussing the contrary evidence supporting the judgment.  Derakhshan also

13

repeatedly challenges the court's rulings that Bonene and Serraino testified credibly and truthfully and that Derakhshan was not credible on any issue. And he constantly asserts the trial court, counsel for Bonene, and Bonene committed various types of misconduct during the trial—events the trial court said never occurred. The appellant "cannot carry his burden on appeal by merely rearguing the 'facts' as he would have them and/or reasserting his position at trial. [Citations.] Such a 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [the appellant] at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.'" (*Slone v. El Centro Regional Medical Center*, *supra*, 106 Cal.App.5th at pp. 1175-1176.) Derakhshan forfeited his substantial evidence challenge.

His arguments also fail on the merits.

### 2. *Substantial Evidence Supported the Trial Court's Rescission Order*

Under California law the basic requirements for an enforceable contract are (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. (Civ. Code, § 1550; *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 9.) The consent of the parties to a contract must be free, mutual, and communicated by each to the other. (Civ. Code, §§ 1565, 1581.) The absence of mutual consent, i.e., the failure to reach a meeting of the minds on all material points, prevents the formation of a contract. (*Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1149; *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 215.) Whether a term is material "'depends on its relative importance

14

to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party.'" (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 468; see *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256, fn. 3.)

Substantial evidence supported the trial court's ruling there was no contract because Derakhshan and Bonene did not agree on a material term of the contract, i.e., whether the patio area adjacent to the guest house was a private or common area. Both parties said the use of the patio area was an important term of the agreement, but they did not have the same understanding of that term when they signed the lease. Bonene understood, based on information Derakhshan provided her, the patio and pool table would be private and for her exclusive use. Only after she began moving in did Derakhshan inform her that she would have to share the patio area with him and that she could not use the pool table unless she invited him to play. Bonene said she would not have agreed to rent the guest house had she known she would have to share the patio area with Derakhshan, and she "assert[ed] strongly that she would never share a patio with a man." In contrast, Derakhshan understood and said he told Bonene before she signed the lease that the covered patio area was a common area and that she would have to pay an additional $200 per month if she wanted to use the pool table. The lease did not mention the patio or the pool table. The parties' different understandings about a material term of the tenancy supported the trial court's ruling rescinding the contract.

Citing Civil Code sections 1689 to 1693, Derakhshan argues Bonene was not entitled to rescind the lease because she did not demonstrate that the guest house was uninhabitable, that

15

Derakhshan breached the lease, that she was a victim of domestic violence or sexual assault, or that she signed the lease under duress.  Because Derakhshan did not raise these arguments in the trial court, however, he forfeited them.  (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [""'theories not raised in the trial court cannot be asserted for the first time on appeal"""]; *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 ["It is axiomatic that arguments not raised in the trial court are forfeited on appeal."].)

### 3. *Substantial Evidence Supported the Trial Court's Award of Restitution*

"Generally, one who is unjustly enriched at the expense of another is required to make restitution.  [Citations.]  The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" (*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238; accord, *Tufeld Corporation v. Beverly Hills Gateway, L.P.* (2022) 86 Cal.App.5th 12, 31.)  "The trial court has 'inherent equitable power' to award restitution when it finds one party has been unjustly enriched.  [Citation.]  We review the trial court's order awarding restitution for abuse of discretion." (*Tufeld Corporation*, at p. 31.)

The trial court did not abuse its discretion in concluding Derakhshan's failure to refund any of Bonene's money resulted in unjust enrichment or in awarding Bonene $16,717 in restitution.  Bonene had keys to the guest house for five days:  October 1, 2021 to October 5, 2021.  The court awarded Bonene the $17,100 she paid Derakhshan on September 5, 2021, less five days'

16

prorated rent of $383.[1]  Because Derakhshan rented the guest house to another tenant for three months beginning on October 6, 2021, Bonene's termination of her tenancy did not cause him to lose any rental income.

Derakhshan argues that "[a]ccording to California Civil Code § 1950.5[, subdivision] (b) [he] had every right to hold [Bonene's] money to be used to reimburse for [Bonene's] breach of contract."  Civil Code section 1950.5 regulates the amount and use of security deposits in rental agreements for residential property.  Assuming that section applies here, there was no evidence Derakhshan sent an itemized list of deductions from the security deposit and returned the balance of the deposit to Bonene, as required under Civil Code section 1950.5, subdivision (h).

4.       *Substantial Evidence Supported the Trial Court's Judgment on Bonene's Defamation and False Light Causes of Action*

The elements of a defamation cause of action are "'(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; accord, *Cocoa AJ Holdings, LLC v. Schneider* (2025) 115 Cal.App.5th 980, 997; *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763.)  "To be defamatory, the statement must contain a provable falsehood." (*Cocoa AJ Holdings,* at p. 997.)

Derakhshan forfeited his substantial evidence challenge to the trial court's judgment on Bonene's cause of action for

---

[1]      Bonene agreed to pay monthly rent of $2,300.
$2,300/30 days = $76.66 per day, and $76.66 x 5 days = $383.33.

17

defamation.  As discussed, the trial court found the letter Derakhshan sent to Coldwell Banker was defamatory. Derakhshan argues "the trial court based its decision on non-existent evidence."  Derakhshan claims that, because the letter to Coldwell Banker was not included in the clerk's transcript, it must not exist.  The letter, however, exists, and the court admitted it at trial as exhibit 9.[2]  The court's statement of decision quotes the letter at length, and Derakhshan does not argue the court quoted the letter inaccurately.  Derakhshan also included the letter on the list of exhibits in the settled statement. He described exhibit 9 as "[c]omplaint letter from [him] to Coldwell Banker disclosing [Bonene's] racist behavior" and indicated the trial court admitted exhibit 9 over his objection.

But the reason exhibit 9 was not included in the clerk's transcript is that Derakhshan did not designate it (or any of Bonene's trial exhibits) in his designation of the record on appeal. As the appellant, it was Derakhshan's burden to provide an adequate record to facilitate review of the judgment for substantial evidence.[3]  (See *LA Investments, LLC v. Spix, supra*, 75 Cal.App.5th at pp. 1061-1062 [appellants forfeited their substantial evidence argument by omitting "substantial portions

---

[2]    Derakhshan does not argue the court erred in admitting the letter.

[3]    On our own motion, we augment the record to include the exhibits admitted by the trial court.  (See Cal. Rules of Court, rules 8.122(a)(3) ["all exhibits admitted in evidence, refused, or lodged are deemed part of the record"] & 8.155(a) [court of appeal may augment the record to include any document filed or lodged in the superior court].)

of the trial court record" containing "legally significant facts necessary to [the] determination of the issue on appeal"].)

In any event, substantial evidence supported the trial court's ruling Derakhshan's letter to Coldwell Banker was defamatory on its face. (See Civ. Code, § 45a ["A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face."].) The letter to Coldwell Banker was a publication (see *Sanchez v. Bezos*, *supra*, 80 Cal.App.5th at p. 763 ["'[p]ublication need not be to the "public" at large; communication to a single individual is sufficient'"]) and is plainly defamatory. Derakhshan stated, for example, that Bonene "told [him] she couldn't stand the 'Jews' despised 'Israelis' and hated the 'Armenians,' [e]specially her current landlord"; that Bonene "realized that she could not enforce her white supremacy and use me as her slave, because of my national origin and color of my skin, [so] she quickly flipped and decided to break our lease agreement," which she did "for illegitimate racist reasons"; that Bonene "follow[ed] her KKK (KU KLUX KLAN) family rituals," which included sending her boyfriend to break into Derakhshan's house; that "[w]hen a slave did not bow down to white supremacy, [she] attack[ed] the unruly slave in the dead of the night while the slave is most vulnerable sleeping"; that Bonene's boyfriend admitted he broke into Derakhshan's house at Bonene's direction; and that Coldwell Banker was "harboring a dangerous racist, . . . you are the broker to a mega racist, evil and violent individual (Melinda Bonene)." And the statements in the letter were false, as Bonene testified.

Derakhshan argues the statements in his letter "do not contain any specific factual allegations that can be proven true or

19

false, but instead reflect [his] subjective views and interpretations." As Derakhshan suggests, opinions—as opposed to statements of fact—are not defamatory. (See *J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP* (2016) 247 Cal.App.4th 87, 100 ["mere opinions are not actionable unless the published statement declares or implies a provably false assertion of fact"]; see also *Issa v. Applegate* (2019) 31 Cal.App.5th 689, 702 ["Though mere opinions are generally not actionable [citation], a statement of opinion that implies a false assertion of fact is actionable."]; *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1471 ["An opinion is actionable if it discloses all the statements of fact on which the opinion is based and those statements are false."].) But the statements in Derakhshan's letter to Bonene's employer were (false) statements of fact. Derakhshan did not merely offer his opinion Bonene was a racist. He said Bonene made specific statements and took specific actions consistent with her alleged racist beliefs.

Derakhshan's challenge to the trial court's judgment on Bonene's false light cause of action is based on his challenge to the judgment on her defamation cause of action. He argues: "Trial court did not establish [Bonene] was defamed to cause False light. Trial court committed reversible errors by erroneously misapplying applicable California Law and jurisprudence in reaching its conclusion in favor of [Bonene] as to her claim of False Light in this matter." The same evidence that supported the court's judgment in favor of Bonene on her defamation cause of action supported the court's judgment on her false light cause of action. (See *Mitchell v. Twin Galaxies, LLC* (2021) 70 Cal.App.5th 207, 218 ["'To establish a false light claim

20

based on a defamatory publication, a plaintiff "must meet the same requirements" as for a defamation claim."]; *De Havilland v. FX Networks, LLC* (2018) 21 Cal.App.5th 845, 865 [""[a] 'false light' cause of action is in substance equivalent to a libel claim""]; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264 ["'[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action"'].)

5.      *Substantial Evidence Supported the Trial Court's Judgment on Bonene's Cause of Action for Intentional Infliction of Emotional Distress*

"A cause of action for intentional infliction of emotional distress exists when there is """(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."'"" [Citations.] A defendant's conduct is 'outrageous' when it is so ""extreme as to exceed all bounds of that usually tolerated in a civilized community."'" [Citation.] And the defendant's conduct must be ""intended to inflict injury or engaged in with the realization that injury will result."'"" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051; accord, *Safechuck v. MJJ Productions, Inc.* (2023) 94 Cal.App.5th 675, 697.)

Substantial evidence supported the trial court's ruling on this cause of action. As the trial court found, Derakhshan's "act of sending [Bonene's] employer a letter falsely accusing her of

21

being part of the KKK, of breaking into his home and making racist statements about Israelis, Hispanics, and Armenians is an example of outrageous conduct which is not tolerated by a civilized society." The evidence also supported the trial court's finding Derakhshan acted intentionally, hoping the letter would ruin Bonene's reputation, cause her to lose her job, and cause her so much distress she would give up trying to recover the money he owed her. Indeed, it is hard to imagine what other motive Derakhshan could have had for sending an unsolicited and extremely defamatory letter to Bonene's employer.

Derakhshan argues that, because Bonene failed to show she suffered any financial loss (such as loss of income), she could not have suffered any harm to her reputation. According to Derakhshan, a "real estate agent's reputation is directly related to her income. It is impossible for a real estate agent to lose her reputation and not lose income or suffer no damages. No loss of income means no loss of reputation therefore the trial court's ruling is flawed and reversible." Neither financial loss nor loss of reputation, however, is an element of a cause of action for intentional infliction of emotional distress. (See *Safechuck v. MJJ Productions, Inc., supra*, 94 Cal.App.5th at p. 697.)

## DISPOSITION

The judgment is affirmed.  The notices, objections, and requests filed by Derakhshan are denied as moot, on the merits, or both.  Bonene is to recover her costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

GIZA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.